# Adkins v. Bynum.

### *Statutory Claim Suit.*

109  281
106  584
109  281
112  449
113  348

109  281
f123  219

1. *Mortgage on stock of merchandise; when not fraudulent as to other creditors.*—A mortgage given by a debtor to secure the payment of the purchase money of a stock of goods presently sold to him,—the sale and mortgage back being contemporaneous and constituting one

[Adkins v. Bynum.]

transaction,—is not fraudulent as to the creditors of the vendee mortgagor, though it was understood that he could sell the goods in the course of business; the transaction not being a conveyance of property which such creditors could have subjected to the payment of their claims, and not involving the convinous intent essential to fraud.

APPEAL from the Circuit Court of Jackson.
Tried before the Hon. J. A. BILBRO.

J. E. BROWN, for appellant.—This case presents a question upon which there have been no adjudication, so far as has been discovered. It is plainly distinguishable from the cases in which this court has held mortgages of stocks of merchandise to be fraudulent. In those cases the mortgagor was the prior owner of the mortgaged property. In this case the mortgagor first acquired the property at the time he executed the mortgage upon it. Where one who is already the owner of a stock of goods mortgages it, and yet holds the possession and management of it as apparent owner, he there-by attempts to put out of the reach of creditors property they could have subjected before. The result of such a transaction is to benefit himself at the expense of his creditors. But where one buys property and mortgages it back for the price, there is no apparent fraudulent motive. Such a transaction could not take from his other creditors any security they had before. After the transaction the debtor had no less property than he had before. Indeed, the creditors might be benefitted, and could not be injured by the transaction. In its very nature it could not be a fraud upon the rights of creditors. No fraudulent motive could underlie such a transaction.

MARTIN & BOULDIN, *contra.*—The common law and two different statutes of our State are subverted and violated by a morgage on a stock of general merchandise where the mortgagor is permitted to retain possession, and sell the goods as his own. It clothes the mortgagor with the power of holding and disposing of the property,—*indicia* of absolute ownership,—thus becoming a means of deceit to future creditors, and certainly a means of hindering, delaying and defrauding ex-

isting creditors.  Again, it is a trust for the benefit of the grantor.—*Benedict, Hall & Co. v. Renfro Bros.*, 75 Ala. 121 ; *McDermott v. Eborn*, 90 Ala. 258.

McCLELLAN, J.—Bynum, a judgment creditor of Brown, levied his execution upon a stock of goods found in the latter's possession.  Adkins interposed a claim to the goods under a mortgage covering them, which had been executed to him by Brown prior to the issuance of execution on said judgment.  The issue was made up between plaintiff in judgment and said claimant, and on the trial thereof the following state of facts was developed :  The property levied on originally belonged absolutely to Adkins, the claimant.  He sold it to Brown on a credit, delivered it to him, and at the same time Brown executed to Adkins a mortgage on the property to secure the payment of the price of it.  Brown bought the goods for sale as a merchant, placed them in a storehouse, began the sale of them immediately, and since then to time of levy had been offering them for sale as a merchant, "and had sold on sundry dates portions of the goods, received the proceeds in his own name, for himself, and kept no account of the amount realized from such sales."  It was understood between Brown and Adkins at the time of the transaction that the former was to sell the goods and apply the proceeds realized therefrom from time to time as payment on the mortgage ; and he did pay to Adkins under this agreement at various times sums aggregating $47.46 from the proceeds of the sale of said goods.  The sale by Adkins to Brown and the mortgage by Brown to Adkins were made June 27, 1892, and the law day of the mortgage was June 1, 1893, Brown meantime having possession of the goods, unless, and except such as were, sold by him in the regular course of his mercantile business.

On the case thus presented the trial court gave the affirmative charge for the plaintiff, and refused to instruct the jury to find for the claimant if they believed the evidence, as requested by the latter, on the theory that the retention of possession by the mortgagor of the stock of goods, for the purposes of sale on his own account rendered the mortgage constructively fraudulent as against the plaintiff, and therefore void.  In review-

ing these rulings it becomes necessary to decide a question which has not heretofore been adjudicated by this or any other court, so far as our investigation has disclosed. That question is whether a mortgage given by a debtor to secure the payment of the purchase money of property presently sold to him and covering that property only, the sale and mortgage back being contemporaneous and constituting one transaction, can be constructively fraudulent as to the creditors of the vendee-mortgagor. It is laid down in the books as a general proposition that the concurrence of three elements is essential in the constitution of a fraudulent conveyance; that is to say, before a conveyance can be declared fraudulent it must be made to appear that there is, (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of property out of which the creditor could have realized his claim or some portion thereof. 8 Am. & Eng. Encyc. of Law, p. 749. In the case at bar there was a creditor to be, and who claims that he was, defrauded, and there was a debtor. So much is clear. But it is not clear that such debtor is shown by what he did to have intended to defraud the creditor, nor that what he did had the effect of hindering, delaying or defrauding the creditor; so that our inquiry relates to the existence of a constituent of the second element necessary to constitute a fraudulent conveyance—the intent of the debtor—and to the whole of the third element—the conveyance of property out of which the creditor might realize his claim. To consider these points in the inverse order of their statement: It is upon the latter, and because of its absence from conveyances of *exempted* property, that such conveyances are universally upheld against attacks of creditors made upon them on the ground of fraud, and this though the actual intent moving the parties in the premises may have been covinous. The creditor having no right to subject such property to the payment of his debt in any event, he is not injured and cannot be defrauded by any disposition made of it by his debtor, nor in consequence of any possible purpose which may actuate the debtor or his grantee in making or accepting the conveyance. It seems to us that the same considerations enforce the same conclusion in cases like the present one, where the conveyance by the debtor is of property presently sold

[Adkins v. Bynum.]

to him, to his vendor, for the purpose of securing the payment of the price of it, and which conveyance back for such purpose is one of the considerations for the sale, required by the contract of sale, and, indeed, is part and parcel of that contract. Before such transaction, thus embracing both the sale and mortgage back, the property involved in both does not belong to the debtor. In the absence of the sale and mortgage, the subject matter is not and would never become the property of the debtor out of which the creditor could realize his claim or any part thereof. How then is he injured? How is he defrauded by the transaction? How can it be said that by purchasing property upon a credit, parting therefor with nothing which the creditor could have subjected to his demands, and, as a part of the sale and purchase, conveying it back to the seller as security for the payment of the purchase money, the debtor has hindered, delayed or defrauded his creditor, when; obviously and confessedly, had nothing of this been done no shadow of right would have ever existed in the creditor to pursue and subject that property.? Indeed, not only is the property in such cases not in the debtor before, and would never have been in him in any sense or for any purpose but for such sale and simultaneous mortgage back, but in its final analysis the transaction cannot be fairly said to invest in him for even a moment of time any beneficial ownership and title. He is a mere conduit for the transmission of the title from the seller as absolute owner through himself and back to the seller as owner upon condition ; and what he acquires in the premises, the only beneficial interest or estate that he does acquire, is a mere equity of redemption, in substance and reality only the right to become the owner of the property by paying for it. And, so far from his creditor being injured or defrauded, he is affirmatively benefitted to the extent of the value of this equity of redemption, and he may well be also benefitted through the opportunity which this use of another's property affords the debtor to realize profits which the creditor may subject, or which the debtor may voluntarily apply, to the satisfaction of the debt. So that, in any view, the creditor loses nothing and cannot be hurt by such a transaction ; and he may well be substantially benefitted. That a conveyance depriving the creditor of nothing to which

he is entitled to look for the payment of his debt, and thus capable, so far as he is concerned, only of beneficial results to him, can be a fraud upon his rights, surpasses comprehension. Such a conveyance does not involve the third essential element of a fraudulent transfer defined in the books. It is not a conveyance of property out of which the creditor could have realized his claim, or some portion thereof.

But, to recur to the inquiry whether such a conveyance can be said to involve the covinous intent essential to fraud : In the first place, when a debtor mortgages a stock of goods which belongs to him to secure the payment of a debt, and reserves, or is allowed to continue in, the possession, for the purposes of sale on his own account, the mortgage is held to be constructively fraudulent as to other creditors, regardless of the actual intent of the parties to it, because the necessary effect of it is to hinder and delay and defraud such other creditors, and the mortgagor and mortgagee are conclusively presumed to have contemplated and intended these necessarily ensuing illegal results. But when such results do not and cannot ensue, when the conveyance has not in fact hindered or delayed any creditor for an instant of time in the collection of his debt, nor deprived or defrauded him of any right which he could possibly have asserted had the transfer never been made, and when the transaction cannot have such effect, there is manifestly no room for the presumption that the parties to the conveyance contemplated and intended such impossible results. And if we get away from presumptions of intent, the case is equally strong in support of the good faith of the parties. To illustrate : Here is a debtor who has nothing in the world. He wants to go into business, it may or may not be with a purpose to make money and pay his debts. He induces a third party to sell him a stock of goods on time upon condition that he simultaneously mortgage the property back to secure the payment of the purchase money. Now the only change in the debtor's attitude towards his creditors worked by this transaction is that, whereas before he had nothing, he now has an equity of redemption in the stock of goods which may be subjected by his creditors, and that, while before he was, it may be, doing nothing, he is now, it may be, in the way of making something

for his creditors. To say that such change in the attitude of the debtor to the obvious benefit of the creditors was actuated by a purpose on his part to hinder, delay and defraud them is absurd.

On both considerations, therefore, that is, that there was no conveyance of property by Brown's mortgage to Adkins which the plaintiff could have subjected to the payment of his debt, and that there was no covinous intent on the part of the mortgagor and mortgagee, we conclude that said mortgage was a valid transfer of the stock of goods to Adkins, and that the court erred both in giving the affirmative charge for plaintiff and refusing it to the claimant.

The judgment is therefore reversed. The cause will be remanded.